# CREIZMAN LLC

565 Fifth Avenue
7th Floor
New York, New York 10017
tel: (212) 972-0200
fax: (646) 200-5022
ecreiz@creizmanllc.com
www.creizmanllc.com

*Via ECF and by Federal Express*

June 23, 2015

The Honorable Dora L. Irizarry
United States District Judge
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *United States v. Emma Poroger, D.O.*, 11-CR-742 (DLI)

Dear Judge Irizarry:

We respectfully submit this reply letter on behalf of Dr. Emma Poroger concerning the calculation of the applicable loss amount under Section 2B1.1 of the Federal Sentencing Guidelines.

I.      **Controlling authority requires that for the purposes of calculating the applicable Sentencing Guidelines, Dr. Poroger should be held responsible only for the losses caused by the conspiracy after September 2008.**

The government offers nothing more than *Miranda-Ortiz* for the proposition that Dr. Poroger should be held responsible at sentencing for losses caused by her coconspirators prior to her entering the conspiracy.  But *Miranda-Ortiz* merely provides that a defendant can be sentenced based on the prior conduct of her coconspirators "only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or knew or reasonably should have known what the past quantities were."  *Miranda-Ortiz*, 926 F.2d 172, 178 (2d Cir. 1991).  Even assuming *Miranda-Ortiz* applies to loss calculations under the Sentencing Guidelines—and, for the reasons discussed below, it does not—the government has failed to prove by a preponderance of the evidence that when Dr. Poroger joined the conspiracy in or about September 2008, she "knew or reasonably should have known what the past [amount of fraudulent billings] were."  *Id.*  Accordingly, the Guidelines loss calculation for Dr. Poroger should not include the amounts fraudulently billed by North Austin before September 2008.

The Honorable Dora L. Irizarry
June 23, 2015
Page | 2

Notwithstanding *Miranda-Ortiz*, which was decided in 1991, the Guidelines in effect at the time of Dr. Poroger's offense, the 2009 Guidelines, make crystal clear that "[a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct . . ." U.S.S.G. § 1B1.3, cmt. n.2 (2009). Accordingly, to the extent the *Miranda-Ortiz* analysis applies to sentencing, the controlling law is that *Miranda-Ortiz* does not apply to loss calculations under the *Sentencing Guidelines*. That is what the district court concluded in *Cook v. United States*, 2006 WL 3333068, at *4 (S.D.N.Y. Nov. 15, 2006), and the government does not, and cannot cite any decisional law to the contrary. Indeed, there is no basis under the law to undertake the *Miranda-Ortiz* analysis with respect to calculating loss under the Guidelines. The Guidelines themselves foreclose that approach. The Commentary to Section 2B1.1 does not permit any calculation of "loss" attributable to Dr. Poroger to include the conduct of her co-conspirators prior to the date she entered the conspiracy in September 2008.[1]

Accordingly, Dr. Poroger's Guidelines loss calculation should include only those losses attributable to the conspiracy after September 2008.

## II.   The government's position that Dr. Poroger should be held responsible for *all* treatments billed is untenable.

The government does not contest that, as a matter of law, amounts billed for legitimate health care services provided cannot be included in the Guidelines loss calculation. At the same time, the government takes the position in this case that *all* amounts billed under Dr. Poroger's PIN should be considered fraudulent unless Dr. Poroger proves by a preponderance of the evidence that she provided legitimate services.[2] That position is completely unfair and wholly disingenuous. As an initial matter, the government enlisted Dr. Poroger as a cooperating witness, and met with her on numerous occasions. After vetting Dr. Poroger, and benefitting from the information she provided, the government submitted multiple letters to the Court attesting to the substantial assistance that Dr. Poroger provided. The government cannot now take the position that it "is not in a position to determine which, if any, of Poroger's claims were legitimate" and that it "does not concede that any of Poroger's claims were legitimate. (Gov't 6/23/15 Ltr. at 2). If the government did not believe Dr. Poroger, it presumably would not have provided her with a cooperation agreement and would not have submitted letters to the Court pursuant to Section 5K1.1. Furthermore, I understand that in proffer sessions, Dr. Poroger's previous attorney provided notarized statements from patients attesting to the fact that Dr.

---

[1] The government mistakenly relies on the Second Circuit's citation to *Miranda-Ortiz* in its opinion in *United States v. Bengis*, 783 F.3d 407 (2d Cir. 2015), as support for the argument that the *Miranda-Ortiz* analysis should apply to the calculation of Dr. Poroger's Guidelines loss. That reliance is misplaced because *Bengis* did not address calculation of loss under the Sentencing Guidelines, but calculation of loss for the purposes of imposing restitution under 18 U.S.C. § 3663A, a wholly separate component of federal sentencing.

[2] The government concedes, however, that it does not know of any way that Dr. Poroger could actually *prove*—beyond her own testimony—that she provided legitimate treatment to patients. *See* Gov't. 6/23/15 Ltr. at 2.

Poroger provided them with legitimate and necessary treatment.

Furthermore, the government conducted a thorough investigation of the North Austin clinic and interviewed not only Dr. Poroger, but also patients, staff, and health care professionals associated with the clinic, and reviewed hundreds of thousands of documents. The government well knows and plainly believed that Dr. Poroger performed treatments for patients that she believed were medically necessary, and that she submitted truthful accounts of those treatments to management for billing to Medicare. For the government to now pretend that it is agnostic as to whether Dr. Poroger performed and billed for legitimate services is inconceivable, and, at a minimum, contrary to the spirit of its obligations under the cooperation agreement. The government prepared an analysis of amount of fraudulent billing using the "categories of fraud" that Dr. Poroger provided them, and arrived at a total of $6,445,813 from November 1, 2006 to August 31, 2008, and a total of $1,352,669 from September 1, 2008 through March 31, 2009, for a total of $7,798,482 in fraudulent billing under Dr. Poroger's PIN. At a minimum, the remainder of the claims submitted under Dr. Poroger's PIN—totaling over $5 million—were legitimate, and the government should be estopped from arguing otherwise.

## III.   Dr. Poroger should be held responsible for a Guidelines loss calculation totaling no more than $1,352,669 and perhaps less than $1 million.

The government calculates the amount of fraudulent billing attributable to Dr. Poroger for the period from September 2008 through the end of the conspiracy as $1,352,669. It arrived at this result by calculating the amounts of claims submitted for certain categories of treatments that Dr. Poroger told the government had to have been fraudulent because she did not authorize those treatments. Adopting the government's analysis, because the loss amount is over $1 million and under $2.4 million, a 16-level enhancement is warranted under Section 2B1.1(b)(1)(I). Accordingly, accepting the government's analysis of the amount of fraudulent billing, the appropriate total offense level is 21, which provides for an advisory Guidelines sentence of 37-46 months imprisonment.

We performed an alternative analysis of the billing that results in our estimate of fraudulent claims to be approximately $820,000. If the Court finds our analysis more persuasive, a 14-level adjustment would be warranted under Section 2B1.1(b)(1)(H), instead of 16 levels. This would result in a total offense level of 19, which provides for an advisory Guidelines sentence of 30-37 months imprisonment.

With Dr. Poroger's assistance, we have calculated the precise amount of legitimate billing for twelve of her patients by going through all of the records in each patient's file to determine whether the tests and procedures billed to Medicare under Dr. Poroger's PIN were actually ordered and performed by Dr. Poroger.[3] In this way, we have determined that, on

---

[3] The twelve patient files that we analyzed were selected by Dr. Poroger before her first interview with the government in January 2012 as a cross section of the roughly 1,500 patients she treated at the North Austin Clinic. Some of those patients had an extensive treatment history with North Austin while others made far fewer visits.

The Honorable Dora L. Irizarry
June 23, 2015
Page | 4

average, two thirds of the tests or procedures billed under Dr. Poroger's PIN for the twelve patients were legitimate.  Below is a table summarizing the results of our analysis of the twelve patient files:

| Patient Name[4] | Total Billed | Fraudulent (absolute) | Fraudulent (as % of total) |
|---|---|---|---|
| L.A. | $20,725.00 | $6,540.00 | 31.56% |
| B.B. | $43,290.00 | $25,750.00 | 59.48% |
| Y.B. | $26,480.00 | $4,305.00 | 16.26% |
| M.B. | $2,250.00 | $50.00 | 2.22% |
| D.D. | $10,500.00 | $220.00 | 2.10% |
| G.F. | $11,050.00 | $1,400.00 | 12.67% |
| T.I. | $51,180.00 | $20,590.00 | 40.23% |
| A.K. | $44,060.00 | $15,650.00 | 35.52% |
| S.K. | $28,015.00 | $4,950.00 | 17.67% |
| S.M | $22,200.00 | $7,830.00 | 35.27% |
| N.T. | $12,500.00 | $5,850.00 | 46.80% |
| V.Y. | $12,180.00 | $2,650.00 | 21.76% |
| K.Y. | $30,790.00 | $9,440.00 | 30.66% |
| **TOTALS** | $315,220.00 | $105,225.00 | **33.38%** |

        To arrive at the figures above, we utilized the following process over the course of several weeks.  For each patient, we reviewed every test or procedure that is recorded in the Medicare billing records and examined the supporting documentation contained in the patient's file to determine whether Dr. Poroger ordered the test or procedure and whether it was performed.  So, for example, to determine whether an EKG that appears in the billing records was legitimate, we looked in the patient's file for a form signed by Dr. Poroger ordering the test and for copies of the test results, which if the EKG had been performed, were stapled to the form ordering the test.  If the patient's file lacked the supporting documentation, the EKG was marked fraudulent.  Then, we tallied all of the fraudulent tests and procedures for each patient and calculated the total fraudulent amount billed for that patient, in both absolute terms and as a percentage of the total billing.  In this way, we arrived at the figures in the table above.

        The set of twelve patient files which we analyzed in this way accounted for $315,220 in billing under Dr. Poroger's PIN, out of the total amount of $13,022,044 that was billed during the entire period Dr. Poroger ran North Austin.  Thus, the amount billed in connection with these twelve patients was 2.42% of the total amount billed.  For each patient, we found that between 2.1% and 59.48% of the amount billed was fraudulent, with a median of 30.66%.  In addition, as indicated in the table above, $105,225 was fraudulent out of a billed amount of $315,220 for the twelve patients.  Thus, under our analysis, 33.38% of procedures billed under Dr. Poroger's PIN

---

[4] We are providing the patients' initials instead of their full name to protect their privacy.  If the Court wishes, we will provide their full names under seal.

The Honorable Dora L. Irizarry
June 23, 2015
Page | 5

were fraudulent.  The remaining 66.62% were legitimate since there was supporting documentation in the files showing that the tests and procedures were ordered and performed.

If one extrapolates based on the preceding observations that approximately two-thirds of the amount billed by Dr. Poroger was legitimate, it follows that out of the $2,458,440.91 billed during the period after Dr. Poroger became aware of the fraud at North Austin—that is, from September 1, 2008 through March 7, 2009—$1,637,812.85 was legitimate, and only $820,627.33 was fraudulent.[5]

In conclusion, our analysis of patient files reflects the reality of this case—that Dr. Poroger was a hard-working doctor who often saw between thirty to forty patients in a single day.  In September 2008, she became aware of significant red flags that put her on notice of the fraudulent billing scheme, and specifically, that certain services that she did not order had been added to her superbill and submitted to Medicare for payment without her knowledge or authorization.  Dr. Poroger has taken full responsibility for continuing to work at the clinic through March 2009 despite her awareness of a high probability that North Austin's management team were engaged in a fraudulent billing scheme.  Since she pled guilty in this case, she has done everything in her power to ameliorate the damage she and her co-conspirators caused to the Medicare system.  It does not serve the interests of justice, however, to hold her responsible for amounts that were billed for legitimate treatments as though those treatments were also fraudulent.

---

[5] Concededly, we do not contend that twelve patient files represent a statistically significant sample of the patients seen at North Austin.  Indeed, our analysis is necessarily preliminary because in order to complete a statistically significant sample, we would have to review many more of the approximately 1,500 patient files in the government's possession.  As the government has represented, a significant number of those files consist largely of documents that are water-damaged and in poor condition.  Accordingly, to perform a more complete analysis—if one can be done at all—would take many months and require significant expenditure of time and resources.  Furthermore, given the substantial health problems she experiences, Dr. Poroger, who would be a necessary resource in conducting this analysis, lacks the stamina to assist in such a formidable undertaking.

The Honorable Dora L. Irizarry
June 23, 2015
Page | 6

   Accordingly, if the Court adopts the government's analysis of North Austin's billing practices, it should calculate Dr. Poroger's total Guidelines offense level as 21.  If it adopts the defense's approach as more reliable, the Court should calculate Dr. Poroger's total Guidelines offense level as 19.


Respectfully submitted,
/S/ Eric M. Creizman
Eric M. Creizman (EC-7684)


cc:  Sarah Hall, Esq. (by ECF and email)
   DOJ Trial Attorney

   Frank Marcigliano (by email)
   Senior United States Probation Officer